**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 95-5443

MICHAEL WILLS,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CR-94-515-A)

Argued: September 27, 1996

Decided: October 29, 1996

Before WILKINSON, Chief Judge, and RUSSELL and HALL,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David Hilton Wise, Fairfax, Virginia, for Appellant.
Markus Heinz Meier, Special Assistant United States Attorney, FED-
ERAL TRADE COMMISSION, Washington, D.C., for Appellee. **ON
BRIEF:** Helen F. Fahey, United States Attorney, Casey R. Triggs,
Special Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Michael Wills appeals his conviction and 28-month sentence for possessing a homemade knife, or "shank," at the District of Columbia's prison in Lorton, Virginia. Finding no error, we affirm.

I.

According to the government's evidence at trial, on November 29, 1994, correctional officers at Lorton received an anonymous note. The note stated that defendant Michael Wills was in possession of a shank because he had been stabbed by a fellow inmate. A search of Wills and his cell was ordered.

Officers Cooper and Dunmore attempted to search Wills in a small room in the cell block. When Dunmore noticed a pointed object in Wills' underwear, Wills became agitated. The officers feared that he would resist, and so they had him put his clothes back on and took him to the control center, where he could be searched in a safer, more secure environment.

At the control center, the shift commander, Captain Johnson, assisted Cooper in the strip search. After Wills had disrobed down to his underwear, he pulled out a shank and said, "This is what you're looking for."

Wills was charged with prisoner possession of a shank, in violation of Va. Code § 53.1-203(4), assimilated to acts at Lorton by 18 U.S.C. § 13. He was convicted following a jury trial and was sentenced to 28 months in prison, a period of supervised release, and a $50 special assessment. He appeals.

II.

Wills was serving time for a 1989 assault with a knife, and had also been convicted in 1992 for stabbing another inmate with a shank. In February 1993, during a shakedown of his cell, two shanks had been found hidden in a light fixture. The government sought to make broad use of these prior acts at trial. In its discretion, the district court kept the government reined in, but all of the evidence was eventually admitted for one purpose or another. Wills contends that its admission was reversible error. We disagree.

A day before trial, the government served notice of its intent to offer, and a request to admit, evidence of the prior convictions and acts under Fed. R. Evid. 404(b). The district court's pretrial order had required that any such notice be served at least five days before trial. Wills moved in limine to exclude the evidence, and the government withdrew its request to use the evidence in its case-in-chief. The government presented its case and rested.

Then the defendant took the stand in his own defense. Once he became a witness, the bases of possible admissibility widened. The government asked the court's permission to introduce the evidence to impeach Wills' credibility. The district court made a wise ruling -- the government could offer only the fact of Wills' two prior felony convictions under Rule 609, but no underlying details, because of the risk of unfair prejudice from the jury's knowing of Wills' prior use of knives and shanks. See United States v. Sanders, 964 F.2d 295, 298 (4th Cir. 1992) (unfair prejudice arising from similarity of prior crimes may substantially outweigh impeachment value; if so, courts should exclude the evidence or limit it to the fact of conviction without more).

Wills told his story: the officers planted the shank in his shirt during the strip search, in retaliation for his having filed a lawsuit against some of them. Then defense counsel asked Wills whether he had ever possessed a shank before, and Wills said yes, but just not on the day charged.[1]

_____

[1] Wills' admission distinguishes this case from Sanders. In that case, it was the government, and not the defendant, that first introduced evidence

The government asked the court to reconsider its limitations on the use of the prior convictions. Reasoning that Wills' admission had removed the unfair prejudice issue, the court allowed the government to inquire about Wills' motive for prior possession of a shank and the factual details of his convictions. Wills freely admitted those details, but then he slipped up by testifying that the incident resulting in his second conviction was the only time he had possessed a shank at Lorton. The government then was permitted to ask Wills about the two shanks found in his cell during the 1993 shakedown.

The rules permit the admission of evidence of prior convictions and acts for certain purposes, and the district court carefully restricted it to the rules' boundaries (and gave the appropriate limiting instructions, we should add). The district court's rulings on evidence are reviewed for abuse of discretion. We see no abuse of discretion.

III.

A.

Wills' other two arguments need not detain us long. He first asserts that the district court somehow confused the jury about the meaning of reasonable doubt.

During deliberations, the jury asked for a definition of reasonable doubt. Our decision in United States v. Reives , 15 F.3d 42 (4th Cir.), cert. denied, 114 S.Ct. 2679 (1994), had just been announced, and the district court proposed to counsel to follow it, i.e., the court would simply repeat its original instruction about reasonable doubt. There was no objection. The court then addressed the assembled jury:

> I'm going to repeat to you the definition that I gave to you at the outset. In doing so, I want you to remember that you

_____

of the inmate's prior possession and use of shanks. We held that the details of these events (which had resulted in convictions) provided little additional impeachment value under Rule 609, but added a great deal of unfair prejudice. Sanders, 964 F.2d at 298. Here, up until Wills' admission, the district court had done just what Sanders permitted: limiting the evidence of prior convictions for similar conduct to the bare fact of conviction.

should not take this instruction out of context but you should consider all of the instructions as a whole.

The court reread its instruction, again with no objection. Review is therefore for plain error. United States v. Olano, 507 U.S. 725 (1993).

Wills argues that, by labeling its reread instruction as a "definition," the court misled the jury into believing it was getting something different than it heard the first time. This argument is specious. Be it labeled an instruction or a definition, it was a "repeat" of the words used "at the outset," and its content was unobjectionable. There was no error, plain or otherwise.

B.

Wills' last argument relates to his sentence. Under the Assimilated Crimes Act, the punishment must be "like" that imposed in state courts. 18 U.S.C. § 13(a). The sentencing guidelines apply to the fullest extent possible, subject to the minimum and maximum in the state statute. United States v. Young, 916 F.2d 147, 150 (4th Cir. 1990). In Virginia, prisoner possession of a shank is a Class 6 felony, punishable by (i) one to five years in prison, with no fine; or (ii) up to twelve months in prison, a fine of up to $2,500, or both. Va. Code § 18.2-10(f). Virginia also has a $30 charge similar to the federal $50 special assessment. Va. Code § 19.2-368.18.

Wills was sentenced to 28 months and no fine, which would be proper under the assimilated state law. He argues, however, that the extra $20 in the special assessment is a "fine," and his imprisonment should therefore be capped at 12 months.[2]

When the special assessment was first enacted, some courts, including this one, held that it could not be imposed in an Assimilated Crimes Act case unless state law also provided for it. See, e.g., United States v. King, 824 F.2d 313, 315 (4th Cir. 1987). In response, Congress added 18 U.S.C. § 3013(d), which specifically made the $50

_____

[2] He does not advocate the less drastic "cure": capping his assessment at $30.

5

assessment applicable to those cases. It follows, then, that state law is now wholly irrelevant on the issue, and the $50 does not make Wills' sentence "unlike" that to which he would be subject in state court.

The judgment of the district court is affirmed.

<u>AFFIRMED</u>

6